# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CYNTHIA ANN RICHMOND, )
)
        Plaintiff, )
)
        v. )   Case No. CIV-14-212-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Cynthia Ann Richmond requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 4, 1965, and was forty-seven years old at the time of the administrative hearing (Tr. 35, 128). She completed the tenth grade, and has past relevant work as a short order clerk, cashier, and golf course attendant (Tr. 29, 174). The claimant alleges that she has been unable to work since December 12, 2009, due to a bone spur on her left foot which has caused numbness in her toes, and depression (Tr. 174).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on July 13, 2010. Her application was denied. ALJ David Gutierrez conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 9, 2012 (Tr. 15-30). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk about two hours during an eight-hour workday, sit for six hours in an eight-hour workday, but that she needed to

ambulate with a cane and must have the option to sit/stand at will but not leave the workstation. He further stated that she could not push/pull, including operating foot controls; occasionally climb ramps, but never climb ladders; occasionally balance, stoop, kneel, crouch, and crawl, but not reach overhead bilaterally; frequently reach, handle, finger, and feel bilaterally; avoid all exposure to irritants, fumes, odors, dust, gas, and poorly ventilated areas, and chemicals; and must avoid all exposure to moving machinery and unprotected heights. He also stated that she was limited to simple, routine, repetitive tasks (that could be done frequently in a work environment free of any fast-paced production requirements) involving only simple work-related decisions (meaning low stress, defined as only occasional decision-making required) and only occasional interaction with coworkers and the public (brief, infrequent, superficial contact) (Tr. 19). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, cutter and paster, surveillance system monitor, and document preparer (Tr. 30).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the treating physician opinion of Dr. Wright, her podiatrist; (ii) by failing to include in her RFC a limitation related to her moderate limitation of concentration, persistence, or pace; and (iii) by failing to properly assess her credibility. The Court finds the claimant's first contention persuasive.

The claimant had the severe impairments of left foot chronic pain syndrome, COPD, adjustment disorder with depressed mood, as well as the nonsevere impairment of

hypertension (Tr. 17). The claimant underwent surgery on her left foot in 2005. Medical records reflect that Dr. Wright treated the claimant beginning in 2005, for pain in her left foot and continued to complain of severe pain and numbness through June 19, 2006 (Tr. 338-354). On June 24, 2010, the claimant went to the ER with complaints of a friend stepping on her left foot and experiencing pain ever since then, and was assessed with a contusion and chronic pain exacerbation (Tr. 259-262). On July 31, 2010, Dr. Ronald Schatzman conducted a physical examination of the claimant, noting that she walked with an antalgic gait but did not use an assistive device, and that heel/toe walking was weak (Tr. 252).

The claimant returned to Dr. Wright in February 2011 with complaints of pain, and he assessed her with paresthesia and neuritis; Dr. Wright indicated that he would assist her with her disability application if she requested because she "obviously can not stand or be active and work" (Tr. 355). On April 16, 2012, Dr. Wright wrote the claimant a prescription to be evaluated and fitted with a walking cane (Tr. 325). Treatment notes through June 25, 2012 indicate that she continued to complain of severe pain and burning in her foot, Dr. Wright instructed her to continue to ice and elevate it, and he stated again in the "Instructed" portion of the treating notes, "Can not stand for any extended period of time" (Tr. 359). On June 25, 2012, he gave her a Kenalog injection and his instructions stated, "ice, proper shoes" (Tr. 368).

On August 4, 2011, Dr. Wright completed a Medical Source Statement (MSS) related to the claimant's physical impairments, stating that she could frequently and occasionally lift/carry less than ten pounds, stand/walk a total of one hour in an eight-

hour workday, sit a total of four hours in an eight-hour workday, and had limited pushing/pulling in her lower extremities (Tr. 307). He further indicated that she would need five or more breaks in an eight-hour workday, need to elevate her lower extremities three times per day, and need to lay supine two hours in an eight-hour workday, and that she would be able to perform work activities one hour in an eight-hour workday (Tr. 307). He stated that she was limited by severe pain with paresthesia in her left lower extremities, she could perform all postural limitations less than two hours in an eight-hour workday, and must avoid all exposure to environmental restrictions (Tr. 308). He referred to objective testing of monofilament test and a gait analysis, which supported his statement, and indicated that her diagnoses were paresthesia, capsulitis, and degenerative joint disease (Tr. 308). Additionally, he checked boxes indicating that she could not sit for six hours of an eight-hour workday, could not sit/stand/walk in combination for eight hours in an eight-hour workday, could not perform part-time work activities of any nature for more than ten hours in a forty-hour workweek, and required four or more unscheduled work breaks in an eight-hour workday due to physical restrictions (Tr. 309). He indicated that this assessment was for one year (Tr. 309). On July 19, 2012, Dr. Wright completed a second MSS, which did not indicate lifting restrictions, but stated that she could stand/walk less than one hour in an eight-hour workday (and wrote in that she was unable to walk less than 100 feet without stopping to rest), that she was limited in her lower extremities for pushing/pulling, and that she would need to elevate her lower extremities two times per day (Tr. 310). He further stated that she could perform two hours of work activities in a normal workday, and continuously for seven hours, and stated that she

could not walk or stand without the use of an assistive device or person assist (Tr. 312). He reiterated the postural limitations, and that she needed to avoid all exposure to extreme cold, extreme heat, and vibration (Tr. 313).

On October 15, 2012, Dr. Johnson Gourd examined the claimant and assessed her with left foot pain with physical limitations of movement and obvious pain on examination, and stated, "Essentially non-weight bearing at this time" (Tr. 372). He noted that her gait was stable and steady with a cane, that rising from a seated position was difficult, and that she ambulated at an appropriate speed with the cane and a walking boot on her left foot (Tr. 372). He stated, *inter alia*, she could occasionally lift up to fifty pounds occasionally and twenty pounds frequently, stand two hours at a time and total for an eight-hour workday, walk one hour at a time and total for an eight-hour workday, and sit six hours at a time and total for an eight-hour workday, noting that she could not bear weight on the left foot without the boot and cane. He further indicated she could never use the left foot or climb ladders or scaffolds, and only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl (Tr. 373-378).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony as well as the evidence contained in the medical record (Tr. 14-28). As to Dr. Wright's opinion, the ALJ recited the limitations indicated in the MSS, then gave it "little weight," because he found it inconsistent with Dr. Wright's treating notes and inconsistent with the evidence as a whole (Tr. 25). The ALJ noted that Dr. Wright had treated the claimant since 2006, but found it suspicious that he stated in 2011 that she could not walk without an assistive device but did not prescribe one until the following year. He further relied on

Dr. Gourd's examination because the claimant had a stable and steady gait with the cane at that time. Additionally, he stated, "there is no indication she cannot sit for at least six hours total," that Dr. Wright only instructed her to ice her foot at one visit, that he never instructed her to lie down or elevate her lower extremities to the extent in the MSSs, and that his instructions to wear proper shoes were an indicator that she was capable of stand/walking at a sedentary level (Tr. 25).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].

In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record as to the claimant's limitations, particularly related to standing and walking. The ALJ's conclusion became speculation when he found that the claimant could stand and/or walk two hours in an eight-hour workday on the basis that Dr. Wright prescribed her a cane and a statement in his treatment notes that she needed to wear "proper shoes" (Tr. 25, 368). In fact, this was accompanied by the statement that she needed to ice her foot (one of multiple times this is contained in the record), and was made at the same time he completed the second MSS, in direct contradiction to the ALJ using it to support a finding that she could stand for up to two hours (Tr. 368). *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'In choosing to reject the

treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).) [quotations omitted] [emphasis in original]. Furthermore, the ALJ acknowledged that the claimant was non-weight-bearing as to her left foot even by Dr. Gourd's assessment, but still gave great weight to Dr. Gourd's sit/stand/walk assessment. Indeed, it seems that the ALJ took great pains to only cite evidence that the claimant could perform the standing/walking levels of sedentary work, in an effort to avoid finding her disabled. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence related to the claimant's impairments. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**